**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**TRACY L.,**

                                    **1:19-cv-1399**
                    **Plaintiff,**     **(GLS)**

            **v.**

**COMMISSIONER OF SOCIAL**
**SECURITY,**

                    **Defendant.**
_____

**APPEARANCES:**                  **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Olinsky Law Group              HOWARD D. OLINSKY, ESQ.
250 South Clinton Street
Ste 210
Syracuse, NY 13202

**FOR THE DEFENDANT:**
HON. ANTOINETTE T. BACON        NATASHA OELTJEN
United States Attorney          Special Assistant U.S. Attorney
100 South Clinton Street
Syracuse, NY 13261

Ellen E. Sovern
Regional Chief Counsel
Office of General Counsel, Region II
26 Federal Plaza, Room 3904
New York, NY 10278


**Gary L. Sharpe**
**Senior District Judge**

## <u>MEMORANDUM-DECISION AND ORDER</u>

### I. <u>Introduction</u>

Plaintiff Tracy L. challenges the Commissioner of Social Security's denial of Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), seeking judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3).  (Compl., Dkt. No. 1.)  After reviewing the administrative record and carefully considering Tracy's arguments, the Commissioner's decision is affirmed.

### II. <u>Background</u>

On November 8, 2016, Tracy filed applications for DIB and SSI under the Social Security Act ("the Act"), alleging a disability beginning October 13, 2016.  (Tr.[1] at 28-29, 203-19.)  After her applications were denied, (*id.* at 134-49), Tracy requested a hearing before an Administrative Law Judge (ALJ), (*id.* at 150), which was held on May 11, 2018, (*id.* at 44-84).  On September 13, 2018, the ALJ issued an unfavorable decision, denying the requested benefits, (*id.* at 26-43), which became the Commissioner's final

---

[1]  Page references preceded by "Tr." are to the administrative transcript.  (Dkt. No. 9.)

determination upon the Appeals Council's denial of review, (*id.* at 1-5).

Tracy commenced this action by filing her complaint on November 13, 2019, wherein she sought review of the Commissioner's determination. (Compl.)  Thereafter, the Commissioner filed a certified copy of the administrative transcript.  (Dkt. No. 9.)  Each party filed a brief seeking judgment on the pleadings.  (Dkt. Nos. 10, 13.)

## III.  Contents

Tracy contends that: (1) the residual functional capacity (RFC) is not supported by substantial evidence; (2) the ALJ improperly evaluated her credibility; and (3) the ALJ was unconstitutionally appointed and, thus, her case should be remanded for a new hearing with a different ALJ.  (Dkt. No. 10 at 10-21.)  The Commissioner counters that the ALJ's findings were free from legal error and are supported by substantial evidence.[2]  (Dkt. No. 13 at 3-25.)

## IV.  Facts

The court adopts the parties' factual recitations to the extent they are

---

[2]  "Substantial evidence is defined as more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept to support a conclusion." *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir.1990) (internal quotation marks and citations omitted).

3

consistent with the statement of facts contained in the ALJ's decision and supported by the medical record.  (Tr. at 31-38; Dkt. No. 10 at 1-9; Dkt. No. 13 at 1-2.)

## V.  Standard of Review

The standard for reviewing the Commissioner's final decision under 42 U.S.C. § 405(g)[3] is well established and will not be repeated here.  For a full discussion of the standard and the five-step process by which the Commissioner evaluates whether a claimant is disabled under the Act, the court refers the parties to its previous decision in *Christiana v. Comm'r of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-*3 (N.D.N.Y. Mar. 19, 2008).

## VI.  Discussion

## A.   RFC Determination

Tracy argues that the ALJ's determination that she has the RFC to

---

[3]  The § 405(g) standard of review in DIB proceedings brought under Title II of the Act also applies to SSI proceedings under Title XVI of the Act.  *See* 42 U.S.C. § 1383(c)(3).  Similarly, the analysis of SSI claims under Title XVI parallels, in relevant part, the statutory and regulatory framework applicable to DIB claims under Title II.  *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).  Accordingly, although the regulatory sections cited herein are only to sections of Title II, the substance is found in both Title II and Title XVI.

4

perform sedentary work with certain limitations is not supported by substantial evidence.  (Dkt. No. 10 at 10-21.)  The Commissioner counters, and the court agrees, that this assertion is without merit.  (Dkt. No. 13 at 3-16.)

A claimant's RFC "is the most [she] can still do despite [her] limitations."  20 C.F.R. § 404.1545(a)(1).  In assessing a claimant's RFC, an ALJ must consider "all of the relevant medical and other evidence," including a claimant's subjective complaints of pain.  *Id.* § 404.1545(a)(3). An ALJ's RFC determination must be supported by substantial evidence in the record.  *See* 42 U.S.C. § 405(g).  If it is, that determination is conclusive and must be affirmed upon judicial review.  *See id.*; *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996).

    *1.    Mental RFC Determination*

In connection with her RFC argument, Tracy argues that the ALJ erred in evaluating the opinion evidence as it pertains to the limitations imposed by the ALJ based on an application of the psychiatric review technique.  (Dkt. No. 10 at 10-15.)  Specifically, she contends that the ALJ erred in failing to give controlling weight to a nurse practitioner's finding that Tracy is "unable to meet competitive standards in the areas of

performing at a consistent pace without an unreasonable number and length of rest periods." (*Id.*)  The Commissioner disagrees and submits that the ALJ properly evaluated the medical opinion evidence, and that substantial evidence supports Tracy's mental RFC.  (Dkt. No. 13 at 3-9.)

Medical opinions, regardless of the source, are evaluated by considering several factors outlined in 20 C.F.R. § 404.1527(c). Controlling weight will be given to a treating physician's opinion that is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." *Id.* § 404.1527(c)(2); *see Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). Unless controlling weight is given to a treating source's opinion, the ALJ is required to consider the following factors in determining the weight assigned to a medical opinion: whether or not the source examined the claimant; the existence, length and nature of a treatment relationship; the frequency of examination; evidentiary support offered; consistency with the record as a whole; and specialization of the examiner.  *See* 20 C.F.R. § 404.1527(c).  The ALJ must provide "'good reasons' for the weight given to the treating source's opinion." *Petrie v. Astrue*, 412 F. App'x 401, 407 (2d Cir. 2011) (citations omitted).  "Nevertheless, where 'the evidence of

record permits [the court] to glean the rationale of an ALJ's decision,'" it is not necessary that the ALJ "have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability."  *Id.* at 407 (citations omitted).

The paragraph B criteria, which must be considered in connection with the psychiatric review technique, require that a plaintiff's mental impairment result in at least two of the following: "(1) [m]arked restriction of activities of daily living; or (2) [m]arked difficulties in maintaining social functioning; or (3) [m]arked difficulties in maintaining concentration, persistence, or pace; or (4) [r]epeated episodes of decompensation, each of extended duration."  20 C.F.R. pt. 404, subpt. P, app. 1, § 12.04(B). "[T]he limitations identified in the 'paragraph B' and 'paragraph C' criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps [two] and [three] of the sequential evaluation process."  SSR 96-8p, 1996 WL 374184, at *4 (July 2, 1996); *see Rohey v. Astrue*, Civ. No. 5:09-CV-1063, 2012 WL 4485778, at *5 (N.D.N.Y. Sept. 26, 2012).  Instead, "[t]he mental RFC assessment used at steps [four] and [five] of the sequential evaluation process requires a more detailed

7

assessment by itemizing various functions contained in the broad

categories found in paragraphs B and C" of the listings.  SSR 96-8p, 1996

WL 374184, at *4.

Here, the ALJ found that Tracy has moderate limitations in

remembering, understanding, and applying information; moderate

limitations in interacting with others; moderate limitations in concentrating,

maintaining, and persisting pace; and moderate limitations in adapting and

managing herself.  (Tr. at 32-33.)  The ALJ concluded that Tracy is able to

perform sedentary work, with the following mental limitations: she is

"limited to a low stress work environment defined as simple, routine,

repetitive tasks," and "basic work-related decisions"; there should be "rare

changes in the workplace setting; occasional interaction with the public and

co-workers; and frequent interaction with supervisors."  (*Id.* at 33.)  In

making his determination, the ALJ had before him the findings and

opinions of Dr. Brett Hartman, Dr. O. Austin-Small, Dr. Kautilya Puri, and

nurse practitioner Donna Finn Kuo.  (*Id.* at 32-37.)

In the area of understanding, remembering, or applying information,

Dr. Hartman, a consultative examiner, observed that Tracy has mild

limitations.  (*Id.* at 397-98.)  He assessed that Tracy's memory skills were

8

generally intact; she was able to understand and follow simple directions; and she had mild difficulty performing complex tasks independently.  (*Id.*) For instance, she was able to recall three of four objects immediately, and three of four objects after five minutes.  (*Id.* at 397.)  Similarly, Dr. Austin-Small, a state agency medical examiner, opined that Tracy has mild limitations in the area of remembering, understanding, and applying information.  (*Id.* at 121.)  For these reasons, the ALJ determined that Tracy has moderate limitations in understanding, remembering, and applying information.  (*Id.* at 32.)

With respect to interacting with others, Dr. Hartman opined that Tracy has mild to moderate limitations.  (*Id.* at 398.)  He assessed that Tracy's "affect was anxious"; she was "a cooperative, rather distress[ed] individual" during her examination; and her eye contact was appropriate.  (*Id.* at 397.) During her examination, she reported being somewhat "clingy" to her mother, and described her other family relationships as "iffy."  (*Id.* at 398.) Similarly, Dr. Austin-Small assessed that Tracy has mild limitations in this area.  (*Id.* at 121.)  For these reasons, the ALJ determined that Tracy has no more than moderate limitations in the area of interacting with others. (*Id.* at 32.)

In the area of concentrating, persisting, or maintaining pace, Dr. Hartman assessed that Tracy has mild limitations.  (*Id.* at 398.)  Tracy reported concentration difficulties, and, during her examination, was able to count without difficulty, but made errors with certain calculations.  (*Id.* at 397.)  Similarly, Dr. Austin-Small assessed that Tracy has mild limitations in concentrating, persisting, or maintaining pace.  (*Id.* at 121.)  Additionally, Tracy's own testimony indicates that she has "trouble staying focused," and is "distracted easily."  (*Id.* at 256-57.)  For these reasons, the ALJ determined that Tracy has no more than a moderate limitation in the area of concentrating, persisting, or maintaining pace.  (*Id.* at 32-33.)

In the area of adapting and managing herself, Dr. Hartman opined that Tracy has moderate limitations.  (*Id.* at 398.)  He noted how she is able to bathe, groom, and dress herself; can cook and shop; can drive, but finds it uncomfortable; and is somewhat reckless with her spending habits.  (*Id.*)  Dr. Austin-Small opined that Tracy has no limitations in adapting or managing herself.  (*Id.* at 121.)  For these reasons, the ALJ determined that Tracy has a moderate limitation in the area of adapting and managing herself.  (*Id.* at 33.)

The ALJ afforded "significant weight" to Dr. Hartman's opinion,

finding that it was consistent with Dr. Hartman's examination of Tracy, and with Dr. Austin-Small's opinion.  (*Id.* at 36.)  In light of the foregoing, the ALJ's determination that Tracy has moderate limitations in remembering, understanding, and applying information; moderate limitations in interacting with others; moderate limitations in concentrating, maintaining, and persisting pace; and moderate limitations in adapting and managing herself, (*id.* at 32-33), was supported by substantial evidence in the record, and was appropriately analyzed and supported.  *See Baszto v. Astrue*, 700 F. Supp. 2d 242, 249 (N.D.N.Y. 2010) ("[A]n ALJ is entitled to rely upon the opinions of both examining and non-examining [s]tate agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability." (citations omitted)); *Boyd v. Colvin*, No. 3:14-cv-1316, 2016 WL 866345, at *3 (N.D.N.Y. Mar. 3, 2016) ("Generally, the more consistent an opinion is with the record as a whole, the more weight [the ALJ] will give to that opinion." (quoting 20 C.F.R. § 404.1527(c)(4)).

To the extent Tracy argues that the ALJ's RFC determination does not "full and fairly account for her at least moderate limitation in concentration, persistence, or pace," and that Dr. Hartman's opinion "does

11

not sufficiently undercut . . . NP Kuo's opinion to provide substantial

support for the ALJ's decision," (Dkt. No. 10 at 10-15), such argument is

without merit.  Kuo, Tracy's nurse practitioner, diagnosed Tracy with

anxiety and depressive disorder, (Tr. at 388-90), and noted during one

examination, in a checkbox questionnaire, that Tracy, among other things,

is "unable to meet competitive standards" in the areas of "complet[ing] a

normal workday and workweek without interruptions from psychologically-

based symptoms," "perform[ing] at a consistent pace without an

unreasonable number and length of rest periods," and "deal[ing] with

normal work stress," (*id.* at 648).

      First and foremost, Kuo's opinion, although a treating medical

source, is not an "acceptable medical source" whose opinion may be

entitled to controlling weight.  *See Genier v. Astrue*, 298 F. App'x 105, 108

(2d Cir. 2008) ("[W]hile the ALJ is certainly free to consider the opinions of

[a nurse practitioner] in making his overall assessment of a claimant's

impairments and residual abilities, those opinions do not demand the same

deference as those of a treating physician." (citations omitted)).  The ALJ

did not reject Kuo's opinion on this ground; rather, the ALJ considered and

afforded "little weight" to her opinion, finding that it was not supported by

her examination of Tracy.  (Tr. at 36.)

For instance, during an examination of Tracy, Kuo opined that Tracy had no memory loss, no loss of ability to concentrate, and "no difficulty with attention with tasks or play." (*Id.* at 391, 424.)  And Kuo consistently assessed that Tracy had "no decreased ability to concentrate," (*id.* at 389, 391, 393, 414, 416, 418, 420, 422, 424, 426, 430, 432), and that her psychiatric medications were working, (*id.* at 388, 390, 392, 417, 419, 421, 425, 429, 431).  It is evident from the ALJ's direct citation to Kuo's treatment notes, (*id.* at 35), that the nature and duration of Kuo's treatment relationship with Tracy was properly considered, and the ALJ's assessment of Kuo's opinions was legally sound.

As such, because Kuo's opinion is inconsistent with other evidence in the record, and because the ALJ's findings regarding the aforementioned medical opinions, (*id.* at 32-33), reflect the proper application of the legal standard for weighing opinions and are supported by substantial evidence, the ALJ did not commit legal error.  *See Duncan v. Astrue*, 782 F. Supp. 2d 9, 13 (D. Conn. 2011) ("[T]he standard of review is whether the record contains substantial evidence supporting the ALJ's conclusions.").

2. *Physical RFC Determination*

13

Next, Tracy argues that the ALJ erred in finding that she was limited only to frequent fingering and handling, and "the failure to determine if a medical professional would find limitation to less than frequent handling and/or fingering is not harmless error." (Dkt. No. 10 at 17-19.)  The Commissioner counters, and the court agrees, that substantial evidence supports the ALJ's physical RFC assessment.  (Dkt. No. 13 at 9-13.)

The ALJ concluded that Tracy is able to perform sedentary work, with the following physical limitations: Tracy "can perform frequent fingering and handling"; she "can occasional[ly] stoop and crouch"; she "can never kneel or crawl; can never climb ladders, ropes, or scaffolds; can never work around unprotected heights"; and she "should avoid loud work environments such as construction sites or factories using loud machinery." (Tr. at 33.)

The ALJ's finding that Tracy is limited to frequent fingering and handling is supported by substantial evidence.  In particular, Dr. Puri, a consultative examiner, opined that Tracy has moderate limitations lifting weights; mild limitations with her gait; and marked limitations with squatting, stooping, kneeling, and bending.  (*Id.* at 404.)  Dr. Puri found that Tracy did "not have any objective limitations in . . . fine motor or gross

14

motor activity"; no muscle atrophy in the extremities; Tracy's hand and finger dexterity were intact; and her grip strength was 5/5 in both hands. (*Id.* at 403-04.)  The ALJ afforded "significant weight" to Dr. Puri's opinion, finding that it was supported by Dr. Puri's own examination of Tracy.  (*Id.* at 36.)

Similarly, during an examination with Dr. Laura Scordino, an orthopedist, Tracy displayed full range of motion of her hands and wrists; had intact sensation and motor function; and had no thenar or hypothenar atrophy.  (*Id.* at 614, 619, 621.)  However, Dr. Scordino noted positive signs for carpal tunnel syndrome, and Tracy elected to proceed with carpal tunnel release surgery on her left hand.  (*Id.* at 620-21.)  One month later, Tracy reported that "things have really been getting better and not that bothersome to her," and she wanted to "hold off" on the surgery and continue conservative treatment instead.  (*Id.* at 614-15.)  She ultimately canceled her surgery, (*id.* at 631), and there is no record of any further treatment for her hands, aside from a note that Tracy did not show up for her scheduled appointment with Dr. Scordino in February 2018, (*id.* at 630).

The ALJ also took into consideration Tracy's daily activities, wherein

she testified that she is able to drive daily; bathe and shower independently; cook and go shopping; comb her mother's hair; tie her shoes; pick up her dogs; and, although typing on her laptop is uncomfortable, she can use her phone instead.  (*Id.* at 62-65, 68-70, 72-74, 250-54, 402.)

In light of the foregoing, the ALJ's determination that Tracy is limited to frequent fingering and handling was supported by substantial evidence in the record, and was appropriately analyzed and supported.  While Tracy cites evidence that she suffers from carpal tunnel syndrome, (Dkt. No. 10 at 17-18), "whether there is substantial evidence supporting [Tracy's] view is not the question," instead, the court must "decide whether substantial evidence supports *the ALJ's decision*."  *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (citations omitted).  For instance, Tracy points to Dr. Scordino's assessment that there was a mass between Tracy's right thumb and index finger, which was painful, and observed symptoms of carpal tunnel on both the left and right hand.  (Dkt. No. 10 at 17; Tr. at 619).  However, based on Tracy's reports of improvement, and wanting to "hold off," and later, cancel, her surgery, the full range of motion of her wrists and hands during her examination with Dr. Scordino, as well as

16

Tracy's own testimony regarding her physical activities, (Tr. at 62-65, 68-70, 72-74, 250-54, 402, 614-15, 619, 621, 631), it was reasonable for the ALJ to find that she is limited to only frequent fingering and handling.  As such, the ALJ did not commit legal error.

  *3.*   *The ALJ's Consideration of Tracy's Subjective Complaints*

Next, Tracy argues that the ALJ's rejection of her subjective complaints is not supported by substantial evidence.  (Dkt. No. 10 at 15-16.)  The Commissioner counters, and the court agrees, that the ALJ properly discounted Tracy's subjective complaints, because they were inconsistent with the majority of her physical examinations, and such finding is supported by substantial evidence and free from legal error. (Dkt. No. 13 at 13-16.)

Once the ALJ determines that the claimant suffers from a "medically determinable impairment[ ] that could reasonably be expected to produce the [symptoms] alleged," he "must evaluate the intensity and persistence of those symptoms considering all of the available evidence; and, to the extent that the claimant's [subjective] contentions are not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry."  *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010) (internal

quotation marks and citations omitted).  In performing this analysis, the ALJ "must consider the entire case record and give specific reasons for the weight given to the [claimant's] statements."  SSR 96-7p, 1996 WL 374186, at *4 (July 2, 1996).

Specifically, in addition to the objective medical evidence, the ALJ must consider the following factors: "1) daily activities; 2) location, duration, frequency and intensity of any symptoms; 3) precipitating and aggravating factors; 4) type, dosage, effectiveness and side effects of any medications taken; 5) other treatment received; and 6) other measures taken to relieve symptoms."  *F.S. v. Astrue*, No. 1:10-CV-444, 2012 WL 514944, at *19 (N.D.N.Y. Feb. 15, 2012) (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vi) (other citation omitted)).

Here, Tracy testified that she needs to sit while cooking and washing dishes; leaning over the sink is problematic; and she has to use a motorized cart when shopping with her mother.  (Tr. at 63-64, 74.)  The ALJ expressly took these subjective complaints into account and found that Tracy's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but that Tracy's subjective statements "concerning the intensity, persistence and limiting effects of [her]

18

symptoms are not entirely consistent with the medical evidence and other evidence in the record."  (*Id.* at 36.)

Specifically, the ALJ considered the objective medical evidence since the alleged onset date, as well as the opinions from Drs. Hartman and Austin-Small, all of which amount to substantial evidence supporting the ALJ's finding that Tracy is able to perform sedentary work, with the limitations described above.  *See supra* Part VI.A.1-2.

Ultimately, the ALJ explicitly acknowledged consideration of 20 C.F.R. § 404.1529 when making his credibility determination, (*id.* at 35), and it is evident from his thorough discussion that the determination was supported by substantial evidence and free from legal error.  *See Britt v. Astrue*, 486 F. App'x 161, 164 (2d Cir. 2012) (finding explicit mention of 20 C.F.R. § 404.1529 and the applicable Social Security Rulings as evidence that the ALJ used the proper legal standard in assessing the claimant's credibility); *see also Judelsohn v. Astrue*, No. 11-CV-388S, 2012 WL 2401587, at *6 (W.D.N.Y. June 25, 2012) ("Failure to expressly consider every factor set forth in the regulations is not grounds for remand where the reasons for the ALJ's determination of credibility are sufficiently specific to conclude that he considered the entire evidentiary record." (internal

quotation marks, alteration, and citation omitted)); *Oliphant v. Astrue*, No. 11-CV-2431, 2012 WL 3541820, at *22 (E.D.N.Y. Aug. 14, 2012) (stating that the 20 C.F.R. § 404.1529(c)(3) factors are included as "examples of alternative evidence that may be useful [to the credibility inquiry], and not as a rigid, seven-step prerequisite to the ALJ's finding" (citation omitted)).

Accordingly, the ALJ did not err in evaluating Tracy's subjective complaints. In light of the foregoing, and in light of the balance of the record, the ALJ's finding that Tracy has the RFC to perform sedentary work is supported by substantial evidence and free from legal error.

**B.     Unconstitutionally Appointed ALJ**

Tracy argues that the ALJ who presided over her application was unconstitutionally appointed, and therefore, her application should be remanded for a new hearing with a different, constitutionally appointed ALJ. (Dkt. No. 10 at 19-21.) The Commissioner counters, and the court agrees, that Tracy failed to raise this argument during the administrative process, and thus, she has waived it. (Dkt. No. 13 at 16-25.)

In *Lucia v. S.E.C.*, the Supreme Court explained that a party is only entitled to relief with respect to a challenge to the constitutional validity of the appointment of an adjudicating officer if it is timely. *See* 138 S. Ct.

20

2044, 2055 (2018).  The plaintiff in *Lucia* had raised that issue before the

Securities and Exchange Commission (SEC).  *See id.*  The Second Circuit

has not yet addressed whether the failure to raise an Appointments Clause

challenge to an ALJ during the SSA administrative process precludes

pursuing that argument in subsequent judicial proceedings, but it recently

ruled on that issue with respect to SEC ALJs.  *See Gonnella v. U.S. Sec. &*

*Exch. Comm'n*, 954 F.3d 536, 543-46 (2d Cir. 2020) ("[A] litigant who does

not object to the constitutionality of an ALJ at any point during . . . SEC

proceedings forfeits that challenge." (citations omitted)).

Several district courts within the Second Circuit have agreed that a

plaintiff must raise the Appointments Clause issue at the agency level

before raising it in federal court.  *See, e.g.*, *Anna M. S. v. Saul*, No.

3:19-CV-0367, 2020 WL 2543044, at *5 (N.D.N.Y. May 19, 2020); *Iris R. v.*

*Saul*, No. 1:19-CV-1165, 2020 WL 2475824, at *6 (N.D.N.Y. May 13,

2020); *Danielle R. v. Comm'r of Soc. Sec.*, No. 5:19-CV-538, 2020 WL

2062138, at *6 (N.D.N.Y. Apr. 29, 2020); *Kevin F. v. Comm'r of Soc. Sec.*,

No. 5:18-CV-1454, 2020 WL 247323, at *7 (N.D.N.Y. Jan. 16, 2020).

Consistent with these holdings, Tracy was required to raise the

Appointments Clause issue at the agency level prior to raising it in federal

court.  Her failure to do so constitutes waiver.  As such, Tracy's argument

that remand is required based on the Appointments Clause is rejected.

## C.    Remaining Findings and Conclusions

After careful review of the record, the court affirms the remainder of

the ALJ's decision, as it is supported by substantial evidence and free from

legal error.

## VII.  Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the Commissioner's decision is **AFFIRMED** and

Tracy L.'s complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-

Decision and Order to the parties.

**IT IS SO ORDERED.**

February 26, 2021
Albany, New York

Gary L. Sharpe
U.S. District Judge